IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MQ ASSOCIATES, INC.,

    Plaintiff,

vs.                                             Case no. 5:07cv81-RS-MD

NORTH BAY IMAGING, LLC and
BRUCE WOOLUM,

    Defendants.

_____/

### ORDER

Before the Court is Plaintiff MQ Associates' (MedQuest) Motion for a Temporary Restraining Order (TRO) (Doc. 3). After an evidentiary hearing on April 24, 2007, the Court entered a preliminary injunction[1] prohibiting Defendants from soliciting Plaintiff's employees and prohibiting Defendants from offering Magnetic Resonance Imaging (MRI) and Computed Tomography scan (CT) services at their office located at 625 W. Baldwin Rd., Panama City, Florida. Plaintiff's request for injunctive relief as to all other issues was denied without prejudice.

### I. Facts

MedQuest is an outpatient imaging center with numerous locations including one in Panama City, Florida. MedQuest provides MRI and CT scans. Defendant Bruce Woolum was employed by MedQuest from 2000 through 2006. In 2003, one year prior to his promotion to Area Manager, Woolum signed an "Optionee Non-Competition

---

[1] Although the hearing was originally noticed as a "temporary restraining order hearing", evidence was presented at the hearing, and the parties agreed that the Court should convert it to a preliminary injunction hearing.

1

Agreement" (Agreement) in exchange for stock options and continued employment. The Agreement contained provisions preventing Woolum from indirectly or directly competing with MedQuest within a defined area for twenty four months after leaving MedQuest. The Agreement also prohibited Woolum from soliciting any of MedQuest's employees during this period. In February 2006, Woolum submitted his resignation to MedQuest, and his last day of work was March 17, 2006.

On April 10, 2006, Woolum, with three other associates, formed North Bay Imaging, LLC (North Bay). According to Woolum, he has a 50% interest in North Bay and is the managing partner. Shortly thereafter, North Bay signed a lease for a building located within two miles of MedQuest's Panama City office. This space had been previously scouted by MedQuest during Woolum's employment, though MedQuest ultimately decided not to lease the space. By mid-April 2007, the North Bay facility had accepted delivery of MRI and Positron Emission Tomography (PET) equipment. MedQuest does not offer PET scans. According to Woolum, the equipment is not currently operable and no opening date has been scheduled for the facility.

Plaintiff's Complaint alleges the following claims: 1) Woolum has breached his non-compete Agreement by, among other things, soliciting MedQuest employees and forming a competing business within the Restricted Area before the expiry of the Agreement; 2) Woolum and North Bay have misappropriated MedQuest's trade secrets; 3) North Bay has tortiously interfered with the Agreement between MedQuest and Woolum; 4) Woolum and MedQuest have tortiously interfered with Medquest's business relations. In its proposed TRO, MedQuest asked the Court to restrain 1) Woolum from violating the restrictive covenants in his Optionee Non-Competition Agreement, 2) North Bay and Woolum from misappropriating MedQuest's trade secrets, 3) North Bay from tortiously interfering with Woolum's non-compete Agreement, and 4) North Bay and Woolum from tortiously interfering with MedQuest's business relations with its existing customers. Because no evidence was presented to prove the last three claims by MedQuest, those claims for relief are denied without prejudice. The remaining portion of the order will focus on MedQuest's first claim for relief.

II. Analysis

The Agreement signed by the parties calls for the application of Delaware law. In Delaware, as in Florida, a preliminary injunction is an "extraordinary remedy." A preliminary injunction "is granted sparingly and only upon a persuasive showing that it is urgently necessary, that it will result in comparatively less harm to the adverse party, and that, in the end, it is unlikely to be shown to have been issued improvidently." Cantor Fitzgerald, L.P. v. Cantor, 724 A.2d 571, 579 (Del. Ch.1998) (citing Mills Acquisition Co. v. Macmillan, Inc., 559 A.2d 1261, 1279 (Del.1989)). "Plaintiff may obtain a preliminary injunction if it establishes the following three elements: (1) a reasonable likelihood of success on the merits, (2) imminent, irreparable harm will result if an injunction is not granted and (3) the damage to plaintiff if the injunction does not issue will exceed the damage to the defendants if the injunction does issue. The elements are not necessarily weighted equally. A strong showing on one element may overcome a weak showing on another element. However, a failure of proof on one of the elements will defeat the application." Id.

Woolum's breach of the Agreement is at the heart of this matter, and as such, it is necessary to address its validity at the outset. To be enforceable, a covenant not to compete must (1) meet general contract law requirements, (2) be reasonable in scope and duration, both geographically and temporally, (3) advance a legitimate economic interest of the party enforcing the covenant, and survive a balance of the equities." American Homepatient, Inc. v. Collier, 2006 WL 1134170, *2 (Del. Ch. Apr. 19, 2006). In addition, "when seeking specific performance of a covenant not to compete, the plaintiff has the burden of establishing [its] case by clear and convincing evidence." Id.

A valid agreement must be based on mutual assent and consideration. Id. It is clear that the parties manifested mutual assent in their dealings about the Agreement. However, Woolum argued that the Agreement is invalid because the consideration of the stock options was illusory. Woolum testified that he attempted to determine how to exercise his options by contacting MedQuest's human resources department; human resources apparently told him (and another former employee, Steven Moss) that

3

MedQuest could not provide him with anything.[2] Woolum assumed that MedQuest's response meant that his stock options were in essence nonexistent. MedQuest's attorney, Todd Latz, confirmed that no MedQuest employees have ever exercised their options. However, Latz also stated that since the company had not gone public, it did not make sense for most of these employees to exercise those options. Latz explained that any employees granted options, including those that leave or are terminated from MedQuest, could choose to exercise those options and the instructions for that process were clearly and unambiguously set out in MedQuest's Stock Option and Grant Agreements. The Defendants did not dispute this contention. Thus, the options, in conjunction with the promise of continued employment of Woolum, are sufficient consideration for a valid contract.

    The Court finds that the Agreement is of reasonable scope and duration. "Non-compete Agreements covering limited areas for two or fewer years generally have been held to be reasonable." Id. at *2, n.5. Woolum's Agreement is limited to two years and provides that he cannot participate in any competing business located within a 25 mile radius of any MeqQuest territory that he was responsible for or performed services for while working at MedQuest. Both of these restrictions are reasonable in scope and duration. The third factor hardly merits any discussion as it is clear that restricting Woolum from competing with MedQuest and preventing him from soliciting its employees advance several legitimate economic interests of MedQuest. Finally, the Court concludes that balancing of equities clearly favors enforcement of the Agreement because Defendants will not likely suffer irreparable harm in the few months prior to the final hearing.

    It is undisputed that Woolum is for all practical purposes the alter-ego of North Bay, and that he has directly solicited at least one of MedQuest's employees, Sara Stock, to come and work for him. Thus, based on the Court's conclusion that the Agreement is likely to be valid and that it has been breached in at least two respects, Plaintiff clearly has a reasonable likelihood of success on the merits with respect to its

---

[2] The person Woolum spoke with at Human Resources did not testify at the hearing or provide an affidavit.

breach of contract claim. In addition, the Court finds that the possible opening of a competing digital imaging center within two miles of Plaintiff's location, in addition to the continued recruitment of MedQuest's employees, will result in imminent and irreparable harm to Plaintiff. Finally, as Defendants cannot predict when North Bay will open, and no evidence was provided to the Court that an opening could occur before the final hearing, this injunction will not likely harm Defendants. Defendants readily admit that not being able to recruit MedQuest employees will not result in any hardship to them.

It is ORDERED:

    1. The following preliminary injunction is granted and will remain in effect until the final hearing on July 30, 2007:

    a. Woolum and North Bay Imaging, LLC, and all persons acting on their behalf, including any officer, agent, representative, and/or employee of North Bay Imaging, LLC, shall not contact or communicate with employees of MQ Associates for the purpose of soliciting or inducing those employees to terminate their employment with MQ Associates and/or to offer them employment with Woolum or North Bay Imaging, LLC in the Restricted Area.

    b. Woolum and North Bay Imaging LLC, and all persons acting on their behalf, including any officer, agent, representative, and/or employee of North Bay Imaging, LLC, shall not provide MRI and CT services in the Restricted Area.

    c. The remaining relief requested by Plaintiff is denied without prejudice.

    ORDERED on April 27, 2007.

                                        /s/ Richard Smoak
                                        **RICHARD SMOAK**
                                        **UNITED STATES DISTRICT JUDGE**